### P. F. THIGPEN ET AL. v. A. S. RUSSELL ET UX.

#### Decided April 14, 1909.

**1.—Homestead—Abandonment—Removal.**

The question of abandonment of a homestead once used and occupied as such, by removal therefrom, is dependent upon the intention of the parties, and whether such removal was with the fixed intention of not returning to the place as a home.

**2.—Same—Evidence—Intention—Declarations.**

Where, under a decree partitioning the estate of a decedent, the homestead, which was the separate property of the decedent, was set apart to the surviving wife as a homestead so long as she might elect to use or occupy the same as such, the fact that after her second marriage she and her husband rented the property and removed to another county where they remained until suit was brought by the heirs, did not unmistakably manifest their true intent, and their ·declarations of their intention accompanying such acts and explanatory thereof were admissible in evidence notwithstanding they may seem self-serving.

**3.—Same.**

The fact that the wife and her husband removed from the homestead to another county and there resided on a place to which title was taken in the wife's name, would not constitute an abandonment of the homestead if they at all times retained the intention not to make their home on the new place, but to return to the first home and resume their occupancy of it.

**4.—Same.**

An offer by husband and wife to sell the property was not necessarily inconsistent with their intention to return to it and reoccupy it as a home if they did not sell.

**5.—Same—Case Followed.**

Facts held to support a finding that the homestead had not been abandoned. Following Foreman v. Meroney, 62 Texas, 723.

**6.—Findings—Reversal.**

That the evidence tends strongly to support a conclusion contrary to that of the trial judge, will not authorize the appellate court to set aside the judgment.

Appeal from the District Court of Goliad County. Tried below before Hon. James C. Wilson.

*Fowler & Fowler,* for appellants.—It being a material question involved in this case, as to whether the defendants, who own and occupy as their apparent legal homestead the premises in Milam County, and have not resided upon the premises in controversy situated in Goliad County since their marriage in August, in 1902, and for some time prior thereto, have had any real abiding intention to occupy the premises in controversy as their homestead, or have only claimed the same and made and intended to make only such repairs and improvements upon the same as would enable them to rent said prem-

ises and to wrongfully collect the money arising from the rent of said premises, evidence of the witnesses to the effect that they heard the defendants or either of them state that they intended to occupy said premises as their homestead, is not admissible, because under the facts and circumstances of this case such statements are the self-serving declarations of the defendants, and when such evidence has been admitted over plaintiffs' objections is reversible error. Wool-fork v. Ricketts, 48 Texas, 37; Reece v. Renfro, 68 Texas, 195; Waples Homestead and Exemptions, pp. 189, 190, 192, 565, 567 and 568; Johnston v. Martin, 81 Texas, 21; Portwood v. Newberry, 79 Texas, 337; 10 Am. & Eng. Ency. of Law, 2d ed., p. 27.

The defendants having acquired, used and occupied the house and lots in Milano as their apparent legal homestead, declarations made by them during their occupancy of such homestead as to their intention to use and occupy the land in controversy, another separate and distinct place of residence, as their homestead at some time in the future, are immaterial, self-serving and inadmissible to prove such intent, and the admission of such testimony over the objections of the plaintiffs constitutes reversible error. O'Brien v. Woeltz, 94 Texas, 148; Archibald v. Jacobs, 69 Texas, 249; Waples Homestead and Exemptions, pp. 567-8.

The court erred in finding as a conclusion of law that the defendant, Susan A. Russell, has not abandoned said land as a homestead, and that judgment should be rendered that plaintiffs take nothing by their suit, because it conclusively appears from the evidence in this case, and the facts proven as set forth in and under the fifth assignment of error, that she had abandoned said premises both in fact and as a matter of law, and judgment should have been rendered for plaintiffs for the recovery of the premises in controversy. Johnston v. Martin, 81 Texas, 21; Mattingly v. Berry, 23 S. W., 215.

Burden of proof on defendants to show absence was temporary: Bell v. Greathouse, 49 S. W., 258; Marshall v. Applegate, 10 S. W., 805; Waples Homestead and Exemptions, pp. 564 and 135; 15 Am. & Eng. Ency. of Law, 646.

Declarations are insufficient to overcome acts of the defendants: Woolfork v. Rickets, 48 Texas, 28; Reece v. Renfro, 68 Texas, 194; Craddock v. Edwards, 81 Texas, 609; Portwood v. Newberry, 79 Texas, 337; Waples Homestead and Exemptions, pp. 565, 567-8, 189-90, 192.

G. E. Pope and J. Gus, Patton, for appellee.

REESE, Associate Justice.—In this case appellants, heirs at law of John Thigpen, deceased, seek to have partitioned between themselves a tract of 200 acres of land, the homestead of said John Thigpen during his lifetime and at the time of his death. The defendants are Mrs. S. A. Russell, the widow of said Thigpen, and A. S. Russell, her husband. After the death of Thigpen, as the result of partition proceedings between his heirs and his widow, the 200 acres in controversy, which was the separate property of John Thigpen, was set apart to his widow as her homestead so long as she

should elect to use the same as such, to revert to the heirs of John Thigpen upon the termination of the homestead right. It was specially adjudged that she should have no life estate in the property.

It was alleged by plaintiffs that the defendant, now Mrs. Russell, had ceased to use or occupy the property as her homestead and had abandoned the same, and that thereby the property became subject to partition. The fact of abandonment was denied, and is the only issue in the case. The case was tried by the court without a jury and judgment rendered for defendants Russell and wife, from which plaintiffs appeal.

The trial court prepared and filed conclusions of fact which were excepted to by plaintiffs and are as follows:

"1. I find that the defendant, Susan A. Russell, was married to John Thigpen in 1876, and a short time afterwards she and said John Thigpen moved on the 200 acres of land in controversy and occupied it as their homestead until John Thigpen's death, which occurred about ten or eleven years ago, having occupied it for a period of about twenty-two years.

"2. That the estate of John Thigpen was by decrees of the District Court of Goliad County partitioned between Susan A. Russell and the heirs of John Thigpen, being the plaintiffs in this case or their ancestors, on the —— day of October, ——, and the —— day of November, A. D. 1897, except the 200 acres in controversy, which was expressly reserved from partition and declared to be the separate property of John Thigpen, deceased, and in said decrees the said 200 acres was set apart to said Susan A. Russell as the surviving widow of John Thigpen, as a homestead so long as she might elect to use or occupy the same as such.

"3. That a short time after said decree of partition said Susan A. Russell went upon said land and made some improvements and lived upon it for about one year, when she left to reside elsewhere, because she could not get any suitable person to live on the place with her, she having no children, and rented the place, and continuously since said date to this present time she has rented said land, and the same is now in possession of her tenant.

"4. I find that from time to time since said land was set aside to her she has caused the premises to be kept in repair and has added some improvements.

"5. I find that said land was the separate property of John Thigpen.

"6. That in 1902 defendant Susan A. Russell married her codefendant, A. S. Russell, who at the time of her marriage to him resided in Milam County, Texas, and since her said marriage she has resided with her husband in Milam County, Texas, making occasional visits to Goliad County to look after this piece of property.

"7. That at the time of his marriage defendant, A. S. Russell, owned and lived on some hotel property in Milam County, which he shortly afterwards lost on account of not being able to pay off an indebtedness that existed on said property, and that after the loss of the hotel property defendants rented various places to live on until in November, 1906, Mrs. Russell borrowed $500, with $350 of which

she purchased a house and some lots in Milano, Milam County, Texas, and since said time she and her husband have resided on said property.

"8. That at the time of the purchase of said lots in Milano it was the intention of defendants to draw the papers in such way that the property would belong to Bran V. Burke, a boy ten years old, who lives with defendants, but on account of the way the papers were gotten up this purpose was not accomplished and the title to said property is in defendant, Susan A. Russell.

"9. I find that the defendant, A. S. Russell, is a surveyor by profession and has an income of probably $200 per annum.

"10. I find that defendant, Susan A. Russell, owns property consisting of several town lots in the town of Fannin, Goliad County, Texas, and the property in Milano, and she has no income other than that received from the land in controversy, which she has each year received and used for her support and maintenance, and I find that defendant, A. S. Russell, owns an interest in several tracts of land in Milam County, Texas.

"11. I find that the house on the 200 acres of land in controversy is out of repair, and has been since the last marriage of Susan A. Russell, and since then has not been fit for occupancy.

"12. I find from the continued declarations in the matter that it has been the intention of Susan A. Russell to return to and occupy the land in controversy as her home as soon as her husband could arrange his business affairs in Milam County so as to leave them, and could get money with which to repair the improvements on said land so as to render them fit for occupancy, and that it was not their intention to occupy the lots in Milano as their homestead.

"13. I find that both Mrs. S. A. Russell and her husband have offered to sell their homestead right to the land in controversy."

The foregoing findings of fact are approved by us without qualification, with the exception of that embraced in the eighth paragraph, which will be later referred to in disposing of the third assignment of error.

From these conclusions of fact the court found, as a conclusion of law, that Mrs. Russell had not abandoned the homestead on the 200 acres of land.

The trial court permitted certain witnesses to testify, over the objection of appellants, to declarations made by appellees as to their intention to move back to and reoccupy Mrs. Russell's home on the land in controversy. To the admission of this testimony appellants excepted and the ruling of the court is made the basis of the first assignment of error.

In so far as the testimony of appellees themselves is embraced in this assignment, it stands on altogether different ground from that occupied by the testimony of the other witnesses, and was in no sense their declaration of their intention, but their testimony under oath as to such intention. This testimony is not subject to any of the objections to the admissibility of their mere declarations to third persons during their absence from the home, as set out in the various propositions under the assignment. The testimony of Bego, Burns

and Patton was, in substance, that at various times, while appellees were living at Milano, they declared that they expected and intended as soon as they could arrange to do so to come back to Goliad County and occupy this homestead.

It has been held that the question of abandonment of a homestead, once used and occupied as such, by removal therefrom, is dependent upon the intention of the parties and whether such removal was with the fixed intention of not returning to the place as a home (Shepherd v. Cassiday, 20 Texas, 29; Goughenant v. Cockrell, id., 98); and in this connection it has been generally held, we believe, that the declarations of the parties is admissible upon this question, notwithstanding they may seem to be self-serving. (Gunn v. Wynne, 43 S. W., 293; Gaar, Scott & Co. v. Burge, 49 Texas Civ. App., 599.)

The authorities cited by appellants in support of their contention are as to the weight and effect of such declarations when contradicted by the actions of the parties, and none of them go so far as to hold that such declarations are not admissible. (Woolfolk v. Ricketts, 48 Texas, 37; Reece v. Renfro, 68 Texas, 195.) In Johnston v. Martin, 81 Texas, 21, the parties owned a homestead in town which they occupied as such and had never occupied or lived upon the property in the country attempted to be claimed as a homestead. In Portwood v. Newberry, 79 Texas, 337, the question was not presented nor decided. In fact, we have not been able to find any case in which it was held that evidence of the declaration of the parties was not admissible on the question of abandonment of a homestead once used and occupied as such.

Evidence had been admitted as to the acts of Mrs. Russell in moving with her husband to Milam County and in renting out the property in question for several years. In the language of the court in Gunn v. Wynne, 43 S. W., 294, "These acts did not unmistakably manifest their true intent, and declarations accompanying such acts and explanatory thereof are also admissible." The acts of removal and renting were not necessarily inconsistent with the intention of the homestead right here claimed. The intention, after all, was the material thing. The court did not err in admitting the evidence. Its weight was for the court, sitting as a jury.

The second assignment of error rests necessarily upon the same grounds as the first, and is overruled.

The third assignment of error assails the finding of fact set out in the eighth paragraph of such findings heretofore referred to, which is as follows: "That at the time of the purchase of the said lots in Milano, it was the intention of the defendants to draw the papers in such way that the property would belong to Bran V. Burk, a boy ten years old, who lived with defendants, but on account of the way the papers were gotten up the purpose was not accomplished, and the title to said property is in Susan A. Russell." Appellees contend that this finding is opposed to the uncontradicted evidence on this point.

The testimony of the witnesses, appellees and Mrs. Jones, on this point is not at all clear, but it is uncontradicted and shows substantially that Mrs. Jones, the grandmother of the boy, Bran V. Burk,

a boy ten years old, who was godson to Mrs. Russell, and lived with her and her husband, lent appellees $500 with which to buy an improved place in Milano, with the understanding that appellees should have only a life interest in the property and that at their death the property should go to the boy. It was intended that the deed should be so drawn, but by mistake it was so drawn as to vest the fee-simple title in Mrs. Russell. The date of this deed is not given in the record so far as we can find, but on November 23, 1906, Mrs. Russell joined by her husband executed a deed, the purport of which was to convey the property to A. S. Russell, the husband, during his natural life and at his death to revert to Bran V. Burk. This deed was intended to carry out the intentions of the parties in the purchase of the property. Both deeds were drawn by appellee, A. S. Russell, who disclosed a considerable degree of ignorance as to such matters by his testimony. This latter deed was not acknowledged for record until January 21, 1908, and there are several circumstances concerning it which affect the transaction as suspicious and not bona fide, but the trial judge, sitting as a jury, was satisfied with the explanation given of them by appellees, and his ruling thereon will not be revised. This evidence, however, conclusively shows that it was not the intention of the parties to draw the deed so that the property would belong to Bran V. Burk, if by this is meant that appellees should have no interest therein. Substituting for this finding, however, such finding as the above evidence authorized, does not in our opinion affect the judgment, as, notwithstanding such finding as alone was authorized by the evidence, as aforesaid, if the parties at all times retained the intention not to make their home on this property, even if it were in the name of Mrs. Russell, but to return to Goliad and resume their occupancy of the home there, it would not constitute an abandonment of the Goliad home. (Baum v. Williams, 16 Texas Civ. App., 407.)

The fourth and fifth assignments of error attack the findings of fact embraced in paragraphs eleven and twelve as not authorized by the evidence. We can not say that there is not sufficient evidence to support the findings, and the assignments, with the several propositions thereunder, are overruled. The offer to sell the property was not necessarily inconsistent with their intention to return to it and reoccupy it as a home if they did not sell. (Gaar, Scott & Co. v. Burge, *supra*.) They had, in fact, no interest which they could dispose of by sale.

The sixth, seventh and eighth assignments of error assail the judgment of the court and the overruling of the motion for a new trial on the ground that it is contrary to the law and the facts in that the evidence conclusively shows abandonment of the Goliad County homestead. Our conclusions of fact are as found by the trial court, who, sitting as a jury, has passed upon the evidence, and in deference to such finding we do not feel authorized to substitute for them different conclusions of fact, so long as we can not say that such findings have sufficient evidence to support them. The evidence tends strongly to support the conclusions that appellees did not intend to return to Goliad County to live, and would have authorized such conclusion,

but that is not sufficient to authorize us to overturn the contrary conclusion of the trial court. The facts thus found by the trial court, in our opinion, justify his legal conclusion that Mrs. Russell has not lost her homestead right in the property. The facts are strikingly similar to those in the case of Foreman v. Meroney, 62 Texas, 723, in which it was held that the homestead right had not been forfeited. That decision has never been overruled or in any way qualified so far as we can find, and it is largely upon its authority that our conclusion rests that the judgment should be affirmed. In that case, as in this, the widow, in whom was the homestead right, married again, and her husband, a year after the marriage, bought a home and lot elsewhere, to which they moved and in which they lived until they sold it, when they moved to another county with the expectation to make it their future home and with no intention to return to live upon the land in controversy, and they expect now (at the date of the trial of the case) not to live on the land in controversy unless compelled by poverty or unavoidable circumstances. The land in controversy was rented to tenants by the year. The facts were even stronger against the retention of the homestead right than in the present case, in so far as the same could rest upon the intention of the parties. The Supreme Court, however, held that the homestead right had not been abandoned. The reasoning in the opinion in that case applies with great force to the facts of this case, and we do not feel at liberty to disregard the authority of the decision as applied to the present case.

We have examined all of the assignments of error and the various propositions thereunder, which are presented in an able and exhaustive brief for appellants. We do not think they present sufficient ground for reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

Writ of error refused.