SPAULDING v. SMITH.  (No. 5300.)

(Court of Civil Appeals of Texas.  San Antonio.
June 22, 1914.  Rehearing Denied
Oct. 7, 1914.)

1. VENDOR AND PURCHASER (§ 349*)—CON-
TRACT — VENDOR'S BREACH — PETITION —
DESCRIPTION.

Where a petition for a vendor's breach of
a contract for the sale of land alleged that
plaintiff in writing, offered to buy from defend-
ant the 251 acres of land which had been fully
described in the petition, and there was no ex-
ception that the petition failed to set out the
description contained in plaintiff's written of-
fer or to state how the offer was communi-
cated to defendant, an exception that the pe-
tition was insufficient, because the contract, as
alleged therein, did not sufficiently describe the
land, so as to comply with the statute of frauds,
was unsustainable.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 1033, 1039–1042; Dec.
Dig. § 349.*]

2. VENDOR AND PURCHASER (§ 349*)—CON-
TRACT—VENDOR'S BREACH—PETITION.

Where a petition for a vendor's breach of
a contract to sell land alleged that plaintiff
telegraphed defendant that his proposition was
accepted, and that $200 forfeit money had been
placed in the bank, and a letter with contract
would follow, but it was not alleged that plain-
tiff's acceptance was subject to the terms of
the contract, or that a contract was sent con-
taining other terms than those agreed on, it
would be presumed that the formal contract
was to embrace only those terms, and the peti-
tion was not objectionable as showing that
plaintiff's acceptance was subject to the provi-
sions of a contract to follow by mail.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 1033, 1039–1042; Dec.
Dig. § 349.*]

3. VENDOR AND PURCHASER (§ 351*)—CON-
TRACT—BREACH—DAMAGES.

Where a vendee had contracted to resell
land at a profit, the measure of his damage for
the vendor's breach of contract was not such
profit, but the difference between the contract
price and the market value of the land at the
date of the breach.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 1017, 1047–1058; Dec.
Dig. § 351.*]

4. EVIDENCE (§ 460*)—RELEVANCY—LETTERS.

In an action for a vendor's breach of con-
tract, a letter written by defendant to plain-
tiff's land company, stating that the land had
been rented, etc., offered to identify the land in
controversy as the property rented, and to show
that it was the same and only property for
which plaintiff and defendant subsequently con-
tracted, but which added nothing to the descrip-
tion of the land as contained in other letters
and telegrams which constituted the contract
of sale, was irrelevant.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

5. EVIDENCE (§ 177*)—BEST AND SECONDARY
EVIDENCE—TELEGRAMS.

Where an original telegram was outside
the jurisdiction of the court, a copy received
by plaintiff and pleaded by him as a part of
the contract sued on was admissible.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 557, 570–579; Dec. Dig. § 177.*]

6. FRAUDS, STATUTE OF (§ 118*)—MEMORAN-
DUM—CORRESPONDENCE.

The memorandum or writing evidencing a
contract for the sale of land, required by the
statute of frauds, may be shown by correspond-
ence.

[Ed. Note.—For other cases. see Frauds, Stat-
ute of, Cent. Dig. §§ 199, 262–265; Dec. Dig. §
118.*]

7. FRAUDS, STATUTE OF (§ 110*)—SALE OF
LAND — CONTRACT — DESCRIPTION — PAROL
EVIDENCE.

Where land was described in a contract of
sale as defendant's 250 acres, on which there
was a new fence, windmill, and tank owned by
the tenant, and it was shown by parol that
the land described in plaintiff's petition was
the only land owned by defendant on which such
improvements were located, the land was de-
scribed with sufficient exactness to render its
identity certain on the introduction of extrinsic
evidence merely disclosing the condition of the
parties at and immediately before making the
contract, and the description was therefore suffi-
cient to satisfy the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Stat-
ute of, Cent. Dig. §§ 225–236; Dec. Dig. § 110.*]

Appeal from District Court, Victoria Coun-
ty;  John M. Green, Judge.

Suit by J. W. Smith against J. W. Spauld-
ing, for breach of contract for the sale of
land.  Judgment for plaintiff, and defendant
appeals.  Affirmed.

Linebaugh & Crain, of Victoria, for appel-
lant.  Proctor, Vandenberge & Crain, of Vic-
toria, for appellee.

MOURSUND, J.  Appellee sued appellant
for $1,875, alleged as the damages suffered by
appellee by reason of the breach by appel-
lant of a contract for the sale of certain land
in Victoria county.  It was alleged that the
contract consisted of a letter from appellee
to appellant, dated October 28, 1912, a night
letter telegram from appellant to appellee,
dated November 1, 1912, and a telegram from
appellee to appellant, dated November 2,
1912, and that the contract was breached by
telegram from appellant to appellee, dated
November 2, 1912.  Writ of attachment was
prayed for, issued, and levied.

Appellant answered by general demurrer,
special exceptions, a general denial, a special
answer pleading the statute of frauds, alle-
gations to the effect that appellee did not ac-
cept appellant's offer but rejected same, and
that, if there was a valid contract, appellee
had, prior to the breach of same, contracted
to sell the land to another at a profit of $511,
and that such amount was all that appellee
was entitled to recover.  This last plea was
stricken out upon exception of appellee.

The trial before the court resulted in a
judgment in favor of appellee for $875, and
for foreclosure of the attachment lien.

We adopt the trial court's findings of fact,
as follows:

"Findings of Fact.

"First.  I find that the plaintiff, J. W. Smith,
is a resident of Victoria county, Tex., and that
the defendant, J. W. Spaulding, is a nonresi-
dent of the state of Texas, and resides in the
state of Nebraska.

"Second.  I find that on the 28th day of Octo-
ber, 1912, and prior thereto, the defendant, J.

W. Spaulding, was and is now the owner of a certain tract of land situated in Victoria county, Tex., consisting of 250 acres out of the M. Irwin and A. Talbot surveys, and that the said 250 acres is the only land owned by the said J. W. Spaulding in Victoria county, and is the only land rendered by him for taxation in said county.

"Third. I find that the said land was purchased by the said J. W. Spaulding through a real estate firm in Victoria, consisting of the plaintiff, J. W. Smith, and E. M. Tracy; that, after the purchase of said land by the defendant, the firm of Tracy & Smith was dissolved, and this parcel of land listed with E. M. Tracy for sale by the defendant; that some correspondence was had in regard to the same between the plaintiff and the defendant; and that on the 20th day of July, 1912, the defendant, with reference to said land, wrote to the Smith-Diebel Land Company, at Victoria, Tex., of which J. W. Smith, the plaintiff, was a member, as follows:

"'Tecumseh, Neb. July 20, 1912.

"'Smith-Diebel Land Co., Victoria, Texas—Gentlemen: Received your letter a few days ago; have been so torn up that I haven't got a chance to write, we just finished remodeling our store. In reply to your letter would 'say that everything goes with the place that is on it when sold. Mr. Tracy has the place rented for this year, so it will be up to him in regard to the grass. I also have the place listed with Mr. Tracy. I gave him my best price and terms when I was down last fall and think you will have no trouble in dealing through him if you have a deal on for the place. I am glad to hear that crops are looking so well this year. I understand they are going to grade the road in front of my place. If there is anything more doing let me hear from you. Am always glad to hear from you at any time.

"'Yours truly, [Signed] J. W. Spaulding.'

"Fourth. I further find that on the 28th day of October, 1912, the plaintiff, J. W. Smith, proposed to defendant a purchase of the tract of land in question, by letter as follows:

"'Victoria, Texas, Oct. 28, 1912.

"'J. W. Spaulding, Tecumseh, Neb.—Dear Sir and Friend: I have an opportunity to make an exchange on your 250 acres and while otherwise I would not care to buy it, in this exchange I can make a fairly good deal for me, and I will make you this offer. Will give you $32.50 per acre net for the land. Place $200 earnest money in the bank, and on January 1st will pay you one-third cash, and execute 4 vendor's lien notes for the balance in equal payments, in 1, 2, 3 and 4 years, interest at 8 per cent. per annum. Deal to be closed Jan. 1, 1913. If this proposition appeals to you let me know at once, as my other man with whom I am dealing will not wait long, and may make other arrangements.

"'Yours very truly, [Signed] J. W. Smith.'

"And that thereafter, to wit, on the 31st day of October, with reference to said trade, telegraphed the defendant as follows:

"'Victoria, Texas, 10—31—1912.

"'J. W. Spaulding, Tecumseh, Neb.: I am offered another trade and party wants immediate answer. Reply to my letter of Monday fully by night letter, my expense. Don't want to hurry you, but other party will not wait. Can pay more cash if desired.

"'J. W. Smith.'

"That both said letter and said telegram were received by the defendant, J. W. Spaulding, and that in response thereto, on the 1st day of November, 1912, the defendant, J. W. Spaulding, telegraphed to the plaintiff, J. W. Smith, as follows:

"'Tecumseh, Neb. Nov. 1, 1912.

"'J. W. Smith, Victoria, Texas: Will sell for $8,125 net to me, one-third cash, balance four years, eight per cent., purchaser to pay commission if any. New fence, mill and tank belong to tenant. Answer, as other parties' message demands immediate reply.

"'J. W. Spaulding.'

"That said message was duly received by the plaintiff, J. W. Smith, on the morning of the 2d of November, 1912, the same being a night letter, and that, immediately upon the receipt of same, the plaintiff, J. W. Smith, accepted the proposition of the said J. W. Spaulding, as contained in said telegram, by a telegram to said J. W. Spaulding, as follows:

"'Victoria, Texas, November 2, 1912.

"'J. W. Spaulding, Tecumseh, Neb.: Deal closed as per your night letter, two hundred dollars forfeit money in First National Bank. Letter with contract will follow. Ans.

"'J. W. Smith.'

"Which said telegram was on the same day received by the said J. W. Spaulding. That on the same day, to wit, November 2, 1912, the defendant telegraphed to the plaintiff by night letter the following:

"'Tecumseh, Neb. Nov. 2, 1912.

"'J. W. Smith, Victoria, Texas: Your message too late, closed with other parties.

"'J. W. Spaulding.'

"Fifth. I further find that, at the time of the proposition of the said J. W. Smith to the said J. W. Spaulding to buy the tract of land in question, the said Smith, plaintiff herein, was ready, willing, and able to buy said land upon the terms proposed by the defendant, Spaulding, and was only prevented from carrying out the contract by the action of the defendant in repudiating the same.

"Sixth. I further find that, at the date of the conclusion of the contract between the plaintiff and defendant, the market value of the parcel of land in question was $9,000, and, the purchase price at which defendant had proposed to sell the same to plaintiff being $8,125, plaintiff's damages, occasioned by defendant's breach of the contract, was $875.

"Seventh. I further find that the parcel of land in question had been occupied by E. M. Tracy during the year 1912 as a tenant, and that the said Tracy had erected upon the same a new fence, windmill, and tank, and that this parcel of land was the only land occupied by the said Tracy as a tenant of the defendant herein, and was the only parcel of land owned by defendant upon which a new fence, windmill, and tank had been erected by the tenant, and was the same tract of land referred to by the defendant, Spaulding, in his telegram to J. W. Smith, dated November 1, 1912, and above set forth.

"Eighth. I further find that on November 2, 1912, the same day on which the defendant, J. W. Spaulding, refused to comply with his contract with J. W. Smith for the sale of said parcel of land, he accepted a proposition from A. B. Calhoun for the purchase of the same; the deal with Calhoun being with reference to the said parcel of land described in plaintiff's petition in this cause."

[1] Appellant's first special exception was to the effect that the petition was insufficient in that the contract, as alleged therein, did not sufficiently describe the land so as to comply with the statute of frauds. The petition does not show that the contract alleged contained an insufficient description of the land; in fact, it was expressly alleged that plaintiff in writing offered to buy from defendant the 251 acres of land, which had been fully described in the petition.

The petition was not excepted to on the ground that it failed to set out the description contained in the written offer, nor on the ground that it failed to allege how the offer was communicated to defendant. We conclude that it was not subject to the exception made, and overrule the first assignment of error.

[2] The second exception was to the effect that the petition showed that plaintiff did not accept defendant's offer, but made his telegram of acceptance subject to the provisions of a contract which was to follow by mail. It was alleged that plaintiff sent a telegram to the effect that the proposition of the defendant was accepted, and that $200 forfeit money was placed in the bank, and that a letter with contract would follow. It was not alleged that the acceptance was subject to the terms of the contract, nor that a contract was sent containing other terms than those agreed upon; and the presumption is that the formal contract was to embrace the terms agreed upon. The assignment is overruled.

[3] Defendant pleaded that on or about November 2, 1912, plaintiff, at the time he entered into the contractual relations with defendant, also entered into a contract with W. T. De Tar, to sell the land to De Tar at a profit to plaintiff of $511, and that such sum constituted the damages suffered by plaintiff by breach of the alleged contract between plaintiff and defendant. Plaintiff excepted to said plea on the ground that same did not allege the proper measure of damages, and the court sustained such exception. By the third assignment appellant questions the correctness of that ruling. We find no case directly bearing upon this point, but conclude that the court was correct in holding that the measure of damages was the difference between the contract price and the market value of the land upon November 2, 1912. The buyer is entitled to be compensated for the loss of his bargain regardless of what he intended to do with the land. If it can be assumed that the purchaser under the resale contract would have complied with its terms, it can also be assumed that he would exact damages for a breach thereof by the other party, to the amount of the difference between the market value and the resale price. The assignment is overruled. Sedgwick on Damages, § 1005; Warville on Vendors, p. 959, § 3.

[4] The fourth assignment attacks the admission in evidence of the letter described in the trial court's third finding of fact, hereinbefore set out. The letter was admitted for the purpose of identifying the land as the property rented or leased to and occupied by E. M. Tracy at that time, and to show that it was the same property and the only property for which plaintiff and defendant subsequently contracted. We do not think the letter adds anything to the description of the land as made by the letter and telegrams set out in the court's fourth finding of fact, and conclude that the same was irrelevant and should have been excluded.

By the fifth assignment appellant complains of the ruling of the court in admitting in evidence the letter described in the fourth finding of fact, and by the sixth assignment he complains of the admission of the copy of telegrams from appellant to appellee dated November 1st, also described in said fourth finding of fact.

[5] It appears that the original telegram, which was the primary evidence, was outside the jurisdiction of the court, and the copy received by appellee, and pleaded by him as a part of the contract sued upon, was therefore admissible as secondary evidence. Smith v. Bank, 82 Tex. 376, 17 S. W. 779; Railway v. Gernan, 84 Tex. 142, 19 S. W. 461; Telegraph Co. v. Smith, 26 S. W. 216; Meyer v. Hale, 23 S. W. 991. The question whether the letter was admissible is dependent upon its probative force as a link in the correspondence relied upon to show a contract in writing sufficient under the statute of frauds. Said letter must be considered in connection with the two telegrams described in the fourth finding of fact in order to determine whether a contract in writing was entered into by the parties.

[6] The memorandum or writing required by the statute of frauds may be shown by correspondence. Peters v. Phillips, 19 Tex. 74, 70 Am. Dec. 319; Patton v. Rucker, 29 Tex. 407; Watson v. Baker, 71 Tex. 747, 9 S. W. 867; Foster v. Land Co., 2 Tex. Civ. App. 505, 22 S. W. 260; Black v. Hanz, 146 S. W. 312. In passing upon the second assignment, we have held that the telegram by appellee, in reply to the one sent by appellant on November 1st, was an absolute acceptance of the proposition made, and we need not further discuss the contention that the same was conditional.

[7] The further objection is urged by appropriate assignments that the correspondence does not contain a sufficient description of the land to make a valid contract under the statute of frauds. The land is described as appellant's 250 acres, upon which there is a new fence, windmill, and tank owned by the tenant. By parol evidence it was shown, as is set out in the seventh finding of fact, that the land described in appellee's petition was the only land owned by appellant upon which there existed a new fence, windmill, and tank owned by his tenant. It therefore appears that the land was described with sufficient exactness to render its identity certain upon the introduction of extrinsic evidence simply disclosing the condition of the parties at and immediately before making the contract. We are unable to distinguish this case in principle from the cases of Taffinder v. Merrill, 95 Tex. 100, 65 S. W. 177, 93 Am. St. Rep. 814, and Beaton v. Fussell, 166 S. W. 459. The cases of Penn v. Yellow Pine Co., 35 Tex. Civ. App. 181, 79 S. W. 842,

and Rosen v. Phelps, 160 S. W. 104, cited by appellant, are not in point. In each of said cases the land was not even described as owned by the party sought to be charged, and proof that such party owned land of the acreage described did not make it certain that the description in the contract applied to such land and could apply to no other. The case of Adams v. Hughes, 140 S. W. 1168, also cited by appellant, is not in conflict with our conclusion. In that case it is held that the description, "All the timber on our lands situated in the southern part of Jasper county, Tex.," is sufficient, but that, had certain tracts out of a number of tracts been described as "certain lands belonging to us in the southern part of Jasper county," the description would have been bad for uncertainty, because such description in itself would not have furnished any information which, by applying it to the number of tracts owned, would make it certain which of such tracts were intended to be conveyed.

We conclude that the evidence, aside from the letter described in the third finding of fact, was sufficient to authorize the judgment of the court, and that such judgment should be affirmed.

Judgment affirmed.